UNITED STATES DISTRICT COURT **FILED**
DISTRICT OF CONNECTICUT

DONNA S. JUTE,                          :
  Plaintiff,                   :          2004 JUN 14 P 2: 11
                               :
VS.                                     :          Civil No. 3:01CV123(AVC)
                               :          U.S. DISTRICT COURT
                               :          HARTFORD, CT.
HAMILTON SUNDSTRAND                     :
CORPORATION,                            :
  Defendant.                   :

## RULING ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an action for damages and equitable relief brought
pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e, as amended by the Civil Rights Act of 1991 ("Title
VII"), and Conn. Gen. Stat. § 46a-60 et seq.  The plaintiff,
Donna S. Jute, alleges that her former employer, Hamilton
Sundstrand Corporation ("Hamilton") subjected her to various
adverse employment actions, including job termination, in
retaliation for her opposition to sexual harassment in the
workplace, for assisting a fellow employee with a lawsuit
alleging gender discrimination, and for filing a charge of
retaliation with the Connecticut Commission on Human Rights and
Opportunities and the Equal Opportunity Commission.

The defendant, Hamilton, now moves pursuant to Rule 56 of
the Federal Rules of Civil Procedure for summary judgment,
arguing that there are no genuine issues of material fact and
that it is entitled to judgment as a matter of law.  The issue
presented is whether the plaintiff has raised a genuine issue of
material fact that she was subjected to retaliation in employment
for engaging in protected activity.  For the reasons hereinafter
set forth, the court concludes that the plaintiff has failed to

raise any genuine issue of material fact and, accordingly,
Hamilton's motion for summary judgment is granted.

### FACTS

Examination of the complaint, affidavits, pleadings, Local
Rule 56 (a) statements, and exhibits accompanying the motion for
summary judgment, and the responses thereto, disclose the
following undisputed, material facts.

The plaintiff, Donna S. Jute, is a resident of Windsor,
Connecticut.  The defendant, Hamilton Sundstrand Corporation
("Hamilton") is a corporation established under the laws of the
state of Delaware with a principal place of business in
Connecticut.

In August of 1986, Jute commenced employment with Hamilton
as a customer material attendant in Hamilton's repair and
overhaul department in East Windsor, Connecticut.  At all times,
Jute was an hourly employee and the terms of her employment were
covered by a Collective Bargaining Agreement ("CBA") between
Hamilton and the International Association of Machinists and
Aerospace Workers, AFL-CIO Lodge 743 ("the union").

In 1990, Jute filed an internal complaint of sexual
harassment against her supervisor, one John Gamache.  As a result
of the complaint and a subsequent investigation, Hamilton asked
Gamache to resign and he did so.

In 1994, several Hamilton employees were campaigning for
positions on the union's executive board.  One of the employees
was one Maryanne Brunton.  During the campaign, Brunton charged

that disparaging statements were being made about her on flyers left in the building in which she worked.  Soon thereafter, Hamilton initiated an investigation and, in furtherance of that investigation, Jute provided two sworn statements at both Brunton's and Hamilton's request stating that she had witnessed a female co-worker leave flyers about Brunton in a Hamilton ladies' restroom.

In 1995, Brunton filed a lawsuit in the United States District Court for the District of Connecticut under Title VII alleging that Hamilton and the union engaged in gender discrimination arising out of the campaign.  Bruton v. Hamilton Standard, Civil No. 3:95cv2581 (JBA).  On July 9, 1998, Brunton appeared for a deposition in that matter and testified, among other things, that Jute had provided a statement to Hamilton as part of its investigation.  Jute herself took no action, directly or indirectly, in support of or related to Brunton's lawsuit against Hamilton.

During this period, one Natonia T. C. Crowe-Hagans served as director of operations for Hamilton's repair and overhaul department.  Jute worked on the first shift as a labor grade 7 repair technician III and as a member of the so-called JDE software implementation team.  On June 15, 1998, Jute claims that Crowe-Hagans told her that, on September 15, 1998, she would receive a promotion to labor grade 5 for her work on the JDE team.  Later that summer and, in particular, one day following the Brunton deposition, i.e., July 10, 1998, Jute claims that

3

Crowe-Hagans abruptly removed her from the JDE team and ordered her back onto the shop floor.  Jute claims that she was the only person pulled off the team.  However, Jute's immediate supervisor, one Glenn Reinhauer, testified that Crowe-Hagans also removed all other employees from the team except for him and that the team ceased to exist at that time.

In July 1998, and shortly after Jute ceased working on the JDE team, Jute claims that management in the information/systems technology department expressed an interest in hiring her.  Jute further claims that a systems manager, one Kirby Strole, inquired of Crowe-Hagans about hiring Jute, but that Crowe-Hagans told Strole that she could not hire her because she did not have a degree.  Jute claims that the systems department did in fact employ individuals without degrees, including one Peter Mulkern.

Jute also claims that she asked an aerobics teacher, a person identified only as "Shelly", as to whether Jute could teach aerobics at Hamilton during the evenings on a paid basis.  Jute alleges that Shelly explained to her that she would simply need to be qualified, and that Shelly would qualify her.  Jute planned to begin teaching during August 1998.  However, Jute claims that "one day" she received an anonymous telephone call in which the caller allegedly told her that he was calling on Shelly's behalf with a message that her services would not be needed.

On September 11, 1998, Jute filed a union grievance requesting job training and claiming that less senior employees

4

were being trained ahead of more senior employees, including
herself.  On September 23, 1998, pursuant to an agreement with
the union, Crowe-Hagans offered all hourly labor grade 7
employees, including Jute, promotion to labor grade 5 so long as
they successfully completed qualification training.  Senior
employees were offered promotion to labor grade 5 on the first
shift, and less senior employees were offered promotion to labor
grade 5 on the second shift.  The CBA controlled the shift
determinations.  Hamilton ranked Jute at the cutoff, that is,
Jute and other employees that were less senior to Jute were
offered second shift promotions.  Jute accepted the offer and, in
November 1998, Jute commenced training.  On December 14, 1998,
however, Jute revoked her acceptance of the offer because the
promotion would have required her to work on the second shift and
she had concerns as to who would take care of her daughter.  Jute
nevertheless continued to train for the labor grade 5 position
with Hamilton's consent.

In April 1999, one Brad Dahlquist, manager of Hamilton's
environmental control systems business unit, allegedly told Jute
that when she qualified and received her inspector stamp, she
would be promoted to labor grade 5 on the first shift.  In
September 1999, Jute completed the qualification training and
received her inspection stamp.  She did not thereafter receive a
promotion.

Later in September 1999, Glenn Reinhauer attempted to get
approval from Crowe-Hagans for Jute to travel overseas with the

5

JDE project.  When the approval was not forthcoming, one Renee
Maclean, a fellow employee, heard Reinauer asked Jute "[w]hy does
[Crowe-Hagans] have such a hard on for you?

In December 1999, Jute claims that one Byron Yost, a
Hamilton supervisor, told her that she "would have [a] salaried
position so that [she] wouldn't have to worry about [an] hourly
layoff."  On January 6, 2000, however, Jute claims that Yost
told her that Crowe-Hagans had rejected her for the position, and
instead offered the job to a salaried employee.

On January 11, 2000, Hamilton laid-off Jute and 19 other
labor grade 7 employees.  Among the 19 was Jute's brother, whom,
like Jute, had previously declined to accept promotion to labor
grade 5 on the second shift.  Hamilton terminated the employment
of all labor grade 7 employees in the area where Jute worked.
Crowe-Hagans was the decision-maker.  Jute claims that
immediately following the lay off, a less senior employee, one
James Foley, assumed a labor grade 5 position on the first shift.
Jute believes that if she had taken a position as a labor grade 5
employee on the second shift, she would not have been laid off.

Following the lay off, Hamilton compiled a list of
terminated employees for possible employment with its sister
company, International Fuel Cells ("IFC").  Jute claims that her
name was not on the list.  A human resources manager at Hamilton,
one Jeffrey Odell, attests that, to the contrary, Jute's name was
referred to IFC.  IFC thereafter interviewed and hired several
former Hamilton employees, including one Linda Ducas.  By way of

6

affidavit, Ducas asserts that she interviewed for two positions, one of which involved shipping and handling and required a forklift license. Jute had experience in shipping and handling, and had a forklift license. Nevertheless, unlike Ducas, Jute did not receive an interview.

On May 18, 2000, Jute filed a charge of retaliation with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") pursuant to Conn. Gen. Stat. § 46a-60. She also filed a charge under Title VII with the Equal Employment Opportunity Commission ("EEOC"). Jute claimed that she "was terminated in retaliation for opposing a discriminatory practice [in 1990] and for assisting in a proceeding under state and federal anti-discrimination statutes [in 1998]." As part of the charge, Jute recited that, in August 1999, she was wrongfully denied promotion to labor grade 5 after having received her inspector's stamp, and that, on January 6, 2000, she was wrongfully denied a salaried position which Byron Yost had promised her.

In November 2000, Jute applied for a position at IFC. She thereafter interviewed with one Russell Hubley. After the interview, Hubley checked Jute's references. At least two persons had favorable things to say about her, including one Lisa Zarzicki, who worked for Hubley, and one Larry Alberti, who worked as a supervisor at Hamilton. Hubley also telephoned Byron Yost at Hamilton. Yost told Hubley that he could not discuss Jute because she had a lawsuit against the company.

Jute claims that Hubley telephoned her and offered her a

7

job.  Hubley denies that he made any job offer and, in the end,
claims that, because of budgetary reasons, he hired no one.  Jute
also claims that Hubley later told her that he had been stopped
at personnel when he attempted to hire her.  Jute further states
that, when she explained to Hubley that she had a lawsuit against
Hamilton, Hubley allegedly stated "that sums up what I heard."

### STANDARD

Summary judgment is appropriately granted when the
evidentiary record shows that there are no genuine issues of
material fact and that the moving party is entitled to judgment
as a matter of law.  Fed. R. Civ. P. 56(c).  In determining
whether the record presents genuine issues for trial, the court
must view all inferences and ambiguities in a light most
favorable to the non-moving party.  See Bryant v. Maffacci, 923
F.2d 979, 982 (2d Cir.), cert. denied, 112 S. Ct. 152 (1991).  A
plaintiff raises a genuine issue of material fact if "the jury
could reasonably find for the plaintiff."  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 252 (1986).  Rule 56 "provides that
the mere existence of some alleged factual dispute between the
parties will not defeat an otherwise properly supported motion
for summary judgment; the requirement is that there be no genuine
issue of material fact."  Liberty Lobby, supra, at 247-48
(emphasis original).  The Supreme Court has noted that:

> Rule 56 must be construed with due regard
> not only for the rights of persons asserting
> claims and defenses that are adequately based
> in fact to have those claims and defenses tried
> to a jury, but also for the rights of persons

> opposing such claims and defenses to demonstrate
> in the manner provided by the Rule, prior to
> trial, that the claims and defenses have no
> factual basis.

Celotex v. Catrett, 477 U.S. 317, 327 (1986).  "One of the

principal purposes of the summary judgment rule is to isolate and

dispose of factually unsupported claims. . .[and] it should be

interpreted in a way that allows it to  accomplish this purpose."

Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

### DISCUSSION

Hamilton first moves for summary judgment on Jute's claim of

discriminatory retaliation.  Specifically, Hamilton asserts that,

because Jute cannot demonstrate that she engaged in any activity

protected by Title VII and, moreover, cannot demonstrate a causal

connection between such activity and an adverse employment

action, Jute's retaliation claim fails as a matter of law.

In response, Jute maintains that, to the contrary, she

engaged in protected activity on multiple occasions beginning in

1990, and that she has adequately demonstrated a causal

connection between her protected activities and the many adverse

employment actions she suffered, including job termination.

Under Title VII, it is:

> An unlawful employment practice for an employer
> to discriminate against any of his employees. . .
> because [she] has opposed any practice made an
> unlawful employment practice. . . or because
> [she] has made a charge, testified, assisted, or
> participated in any manner in an investigation,
> proceeding or hearing under Title VII.

42 U.S.C. § 2000e-3(a), Title VII § 704(a).  As set forth above,

9

there are two distinct clauses in § 704(a), i.e., an "opposition clause" and a "participation clause." <u>Morris v. Boston Edison Co.</u>, 942 F. Supp. 65, 71 (D. Mass. 1996). The activity protected by each clause differs. <u>Id.</u> The opposition clause prohibits retaliation because the employee opposed any practice made unlawful by Title VII. <u>Robinson v. Southeastern Pa. Trans. Auth.</u>, 982 F.2d 892, 896 n. 4 (3d Cir. 1993). The participation clause, on the other hand, prohibits retaliation because the employee charged, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under Title VII. <u>Id.</u>

As with other Title VII claims, a claim of retaliation is examined using the familiar <u>McDonnell Douglas</u> burden shifting analysis. <u>Reed v. A.W. Lawrence & Co.</u>, 95 F.3d 1170, 1177 (2d Cir. 1996). Under this framework, the plaintiff:

> has the initial burden of establishing a prima facie case of [retaliation]. . . . If [she] establishes a prima facie case, the burden shifts to [the defendant] to articulate a legitimate, non-discriminatory reason for the adverse employment decision. If [the defendant] offers a legitimate, non-discriminatory reason for its actions, the burden reverts to [the plaintiff] to show [the] proffered reason was a pretext for discrimination.

<u>Burlington v. United Airlines, Inc.</u>, 186 F.3d 1301, 1315-16 (10th Cir. 1999) (citations omitted).

A.    <u>The Prima Facie Case</u>

To make out a prima facie case of retaliation, the plaintiff must show by a preponderance of the evidence:

10

> (i) participation in a protected activity
> known to the defendant; (ii) an employment
> action disadvantaging the plaintiff; and
> (iii) a casual connection between the
> protected activity and the adverse employment
> action.

Tomka v. Sheiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995).

(i)   Participation In Known Protected Activity

Jute argues that she engaged in protected activity known to
Hamilton: (1) in 1990, when she filed an internal complaint of
sexual harassment against her supervisor, John Gamache, and
thereby opposed a practice made unlawful by Title VII; (2) in
1994, when she provided two sworn statements to Hamilton after
fellow employee Maryann Brunton complained that disparaging
statements were being made about her on flyers left in the
building in which she worked, and thereby participated in a
proceeding under Title VII; (3) in 1998, when she was identified
as a witness in Brunton's lawsuit against Hamilton and, again,
thereby participated in a proceeding under Title VII; and (4) on
May 18, 2000, when Jute filed a charge of retaliation with the
CCHRO and the EEOC, and thereby opposed a practice made unlawful
by Title VII.

Hamilton does not dispute that Jute's 1990 complaint of
sexual harassment or the charge that she filed in 2000 constitute
protected activity.  Hamilton does contend, however, that items
(2) and (3) above are not protected, that is, the two statements
that Jute furnished to Hamilton in 1994 as part of an internal
investigation, and Brunton's 1998 identification of Jute as a

11

witness in a federal lawsuit.  In Hamilton's view, because the
1994 investigation was internal and was not brought pursuant to
Title VII, it cannot constitute protected activity.  Further,
with respect to Brunton's federal lawsuit, Hamilton maintains
that, because Jute was only identified as a witness and never
testified, submitted affidavits, or actually appeared as a
witness, Jute did not "participate" in protective activity within
the meaning of Title VII.

The court agrees with Hamilton in part.  The participation
clause of Title VII § 704(a) prohibits an employer from
retaliating against an employee because the employee assisted or
"participated in any manner in an investigation, proceeding or
hearing under Title VII." Id.  "The words `participate[] in any
manner' express Congress' intent to confer `exceptionally broad
protection' upon employees covered by Title VII." Deravin v.
Kerik, 335 F.3d 195, 203 (2d Cir. 2003). "[T]he term `any' must
be given literal effect." United States v. Gonzales, 520 U.S. 1,
5, 117 S.Ct. 1032 (1997).  As set forth above, the investigation
or proceeding must be brought under Title VII. Id.; see also
EEOC v. Total Sys.Serv., 221 F.3d 1171, 1174n.2 (11th Cir. 2000)
("At a minimum, some employee must file a charge with the EEOC. .
. or otherwise instigate proceedings under the statute for the
conduct to come under the participation clause.").  There is no
requirement, however, that such participation be "active. . .
affirmative. . . action." Williams v. J.B. Parks Wholesale
Florist, Inc., No. 3:95cv2599-D, 1997 WL 160194, *2 (N.D. Tex.

12

March 31, 1997) (a person identified without her knowledge as a witness in another person's EEOC charge is participating in protected activity); <u>United States v. City of Milwaukee</u>, 390 F. Supp. 1126, 1128 (E.D. Wis. 1975) (extending Title VII § 704(a) protection to <u>potential</u> witnesses in a Title VII action).

In 1994, Hamilton conducted an internal investigation concerning inappropriate flyers that were found in a Hamilton ladies' room and, as part of that investigation, Jute provided two statements. The investigation was internal and there is no evidence that it was brought under Title VII. Consequently, Jute cannot be said to have been engaged in protected activity. <u>See</u> <u>Tuthill v. Consol. Rail Corp.</u>, No. 96-6868, 1997 WL 560603, *3 (E.D. Pa. Aug. 22, 1997) ("Title VII's definition of `protected activity' does not include participation in an internal investigation").

Jute did, however, participate in a proceeding under Title VII when, in 1998, Brunton identified her as a witness during a deposition in a Title VII lawsuit against Hamilton and the union. While Jute never testified, submitted affidavits, or appeared as a witness in that matter, she is nevertheless deemed to have participated in protected activity. <u>See</u> <u>e.g.</u>, <u>Williams</u>, 1997 WL 160194, at *2.

In sum, the court concludes that Jute engaged in protected activity: (1) in 1990, when she filed an internal complaint of sexual harassment against her supervisor, John Gamache; (2) in 1998, when she was identified as a witness in Brunton's title VII

13

lawsuit against Hamilton and (3) on May 18, 2000, when She filed
a charge of retaliation with the CCHRO and the EEOC.

       (ii)       <u>Adverse Employment Action</u>

    Jute next argues that Hamilton subjected her to multiple
adverse employment actions, when: (1) in July 1998, Crowe-Hagans
removed her from the JDE software implementation team one day
following the Brunton's deposition in which Brunton disclosed
Jute as a witness in her federal lawsuit; (2) in July 1998, the
information/systems technology department expressed an interest
in hiring her but withdrew that interest when Crowe-Hagans told
the systems manager that she could not hire Jute because Jute did
not have a college degree; (3) in September 1998, she was denied
an opportunity to work as a paid aerobics instructor; (4) in
September 1998, Crowe-Hagans did not give her a promised
promotion to labor grade 5 for work on the JDE team; (5) in
September 1998, Hamilton placed Jute at the cutoff for possible
promotion to labor grade 5 on the first shift, that is, Jute and
those employees that were less senior to her were offered the
less desirable promotion to labor grade 5 on the second shift;
(6) in September 1999, Brad Dahlquist did not promote her to
labor grade 5 as previously stated even though Jute had earned
her inspection stamp; (7) in September 1999, Crowe-Hagans
allegedly denied her the opportunity to travel overseas with the
JDE team; (8) in December 1999, Crowe-Hagans allegedly denied her
a salaried position working with one Byron Yost, (9) in January
2000, Hamilton terminated her employment; (10) in January 2000,

Hamilton did not include her on a list for IFC of potential rehires; and (11) in November 2000, Hamilton allegedly gave false information to IFC, including that Jute had filed a lawsuit against Hamilton, and thus prevented her rehire.

In response, Hamilton maintains that the only adverse employment action that may be considered here is the action that gave rise to her CCHRO charge and her EEOC charge, that is, her layoff.  In Hamilton's view, any adverse employment actions that precede Jute's job termination are barred by the statute of limitations and by her failure to first file charges with the CCHRO and the EEOC.  Hamilton further asserts that any adverse employment action arising subsequent to Jute's job termination is barred because Jute never filed a CCHRO or EEOC charge on such claims.

In reply, Jute maintains that the "claims based on these employment actions are not time barred. . . [because] the retaliation against [Jute] was `continuous' from the date she was removed from the JDE team in July 1998."  The court cannot agree.

"A Title VII plaintiff must file a charge with the EEOC within 180 days of the violation or, where the plaintiff first files with a state or local equal employment agency [i.e., the CCHRO], within 300 days of the violation." Gomes v. AVCO Corp., 964 F.2d 1330, 1332-33 (2d Cir. 1992).  "Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was part of that violation, even conduct that occurred outside the limitations period." Cornwell

v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994).  "A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period."  Place v. Abbott Laboratories, 215 F.3d 803, 807 (7th Cir. 2000).  "`Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire'" [are easy to identify and hence] are `not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" Tademe v. Saint Cloud State University, 328 F.3d 982, 987 (8th Cir. 2003) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).  Each such occurrence "starts a new clock for purposes of filing charges related to that act, and an employee must file charges within 180 days or 300 days (whichever is applicable) of a discrete discriminatory action." Id.

Further, "[a] district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is `reasonably related' to that alleged in the EEOC charge." Butts v. New York Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993). "[T]he purpose of the [Title VII] exhaustion requirement. . . is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." Stewart v. United States Immigration and Naturalization Service, 762 F.2d 193, 198 (2d Cir. 1985).

16

A.    <u>Conduct Occurring Prior To The EEOC Charge</u>

On May 18, 2000, Jute filed a charge of retaliation with the CCHRO and the EEOC claiming that she "was terminated in retaliation for opposing a discriminatory practice [in 1990] and for assisting in a proceeding under state and federal anti-discrimination statutes [in 1998]."  As part of the charge, Jute also recited that: (1) in August 1999, she was wrongfully denied promotion to labor grade 5 after having received her inspector's stamp, and that: (2) on January 6, 2000, she was wrongfully denied a salaried position which Byron Yost had promised her. Because each of these claims are included in the EEOC charge and are alleged to have occurred after July 23, 1999, that is, within 300 days of the May 18, 2000 filing, they may be considered here.

The court may not consider, however, each of Jute's claims that are alleged to have occurred prior to the 300 day limitations period, that is, prior to July 23, 1999.  These claims[1] are easily identified as discrete acts upon which Jute should have filed separate charges, and consequently the continuing violation doctrine may not be employed to save them. Further, the court also may not consider Jute's September 1999 claim of retaliatory refusal to authorize travel with the JDE

---

[1] The claims include Jute's: (1) July 1998 claim of retaliatory removal from the JDE software team; (2) July 1998 claim of retaliatory refusal to hire by the information/systems technology department; (3) August/September 1998 claim of retaliatory refusal to hire her as an aerobic instructor; (4) September 1998 claim of retaliatory refusal to promote for work on the JDE team; and (5) September 1998 claim of retaliatory placement on the promotion list for second shift.

team, and her January 2000 claim of retaliatory refusal to refer
her name to IFC for potential hire because, although they arose
within the 300 day limitations period, Jute failed to raise them
in her EEOC filing.

B.    Conduct Occurring After The EEOC Charge

"[C]laims that were not asserted before the EEOC may be
pursued in a subsequent federal court action if they are
reasonably related to those that were filed with the agency."
Deravin, III v. Kerik, 335 F.3d 195, 200-01 (2d cir. 2003)
A claim is reasonably related if it "is one alleging retaliation
by an employer against an employee for filing an EEOC charge."
Butts v. City of New York Dep't of Housing Preservation and
Development, 990 F.2d 1397, 1402 (2d Cir. 1993).  In this case,
Jute alleges that, in November 2000, Hamilton retaliated against
her after she filed her EEOC charge by furnishing a false
reference to IFC in order to prevent her rehire.  Because the
claim alleges retaliation, it is reasonably related as a matter
of law and not subject to exhaustion.

In sum, the court may consider only the following alleged
adverse employment actions: (1) a January 11, 2000 retaliatory
job termination; (2) an August 1999 wrongful denial of promotion
to labor grade 5 after having received her inspector's stamp; (3)
a January 6, 2000 wrongful denial of a salaried position which
Byron Yost had promised her; and (3) a November 2000 retaliatory
furnishing of a false reference to IFC to prevent Jute's rehire.

18

(iii)    <u>Causal Connection</u>

"Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." <u>Manoharan v. Columbia University Co. of Phys. & Surgeons</u>, 842 F.2d 590, 593 (2d Cir. 1998).[2]  <u>See</u> <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.2d 759, 769 (2d Cir. 1998) (plaintiff established causal connection where discharge came less than two months after filing a complaint with her employer and just ten days after filing a complaint with the New York division of human rights).

"[A] substantial time lapse between an employee's protected activity and the adverse employment action is counter-evidence of any causal connection between the two for purposes of a retaliatory action." <u>Reed v. Connecticut Dep't of Trans</u>, 161 F. Supp.2d 73, 83 (D. Conn. 2001) (<u>citing Johnson v. University of Wisconsin-Eau Claire</u>, 70 F.3d 469, 480 (7th Cir. 1995) (concluding that twenty month gap between the protected activity and adverse employment decision discounted evidence of causal connection)); <u>Bayard v. Riccitelli</u>, 952 F. Supp. 977, 987 (E.D.N.Y. 1997) (one year gap between employee's complaints and adverse employment action was too long to establish a causal

---

[2] An employee may also demonstrate proof of casual connection through evidence such as disparate treatment of fellow employees engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant." <u>DeCintio v. Westchester County Med. Ctr</u>, 821 F.2d 111, 115 (2d Cir. 1987). Jute has not shown any such disparate treatment or direct evidence of retaliatory animus.

connection between those complaints and her termination); see also Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (passage of three months too long to suggest a causal relationship).

Applying these principles, the court concludes that significant lapses of time between Jute's protected activity and the adverse employment actions she suffered discount the lion's share of the causal connections sought to be established. Certainly, Jute's 1990 complaint of sexual harassment is far too remote in time to be causally linked to any of the adverse actions occurring in 1999 or 2000. Similarly, the July 9, 1998 disclosure of Jute as a witness in Brunton's Title VII lawsuit is also too far removed from the September 1999 promotion denial (over one year)[3], the January 6, 2000 salaried position denial (over one year), or the January 11, 2000 lay off (over one

---

[3] Jute claims that in April 1999, one Brad Dahlquist, manager of Hamilton's environmental control systems business unit, allegedly told Jute that when she qualified and received her inspector stamp, she would be promoted to labor grade 5 on the first shift. Upon being denied this opportunity at the time of her qualification in August/September 1999, Jute claims herein a retaliatory denial of a promotion. There is no evidence in the record, however, that Dahlquist ever had the authority to make such a promise, as such offers were controlled by the CBA. If such a promise had been honored, it is likely that it would have been void as unlawful. See Medo Photo Supply Corp v. NLRB, 321 U.S. 678, 687 (1944) (holding that any individual contract entered into between the company and its individual employees would be unlawful because the NLRA makes it an unfair labor practice for an employer to bargain directly with employees over the terms and conditions of employment); see also NLRB v. Local 46, 149 F.3d 93, 108 (2d Cir. 1998 ("The law leaves knowing parties to an illegal agreement where it finds them and gives no relief.")

year).[4]

However, the court concludes that the six months that passed between Jute's May 18, 2000 CCHRO/EEOC filing and the allegedly false employment reference that Hamilton gave to IFC concerning Jute is not too remote in time to constitute evidence of a causal connection.  Though six months is somewhat of an extended period, opportunities for retaliation after an employee has been terminated do not immediately present themselves.  See e.g., Mandell v. County of Suffolk, 316 F.3d 368, 384 (2d Cir. 2003).

In sum, Jute has established a causal connection with respect to her claim that Hamilton retaliated against her by providing IFC with a false employment reference on account of her charge of retaliation with the CCHRO and the EEOC after Hamilton terminated her employment.

To establish a prima facie case retaliation where the purported adverse employment action is a false reference, a plaintiff must offer more.  The plaintiff must come forward with evidence "that the statements of the former employer caused or contributed to [her] rejection by the prospective employer." Sarno v. Douglas Elliman-Gibbon & Ives, 183 F.3d 155, 160 (2d Cir. 1999).  The record is devoid of any such evidence.  There is no affidavit or other sworn testimony from an IFC official

---

[4] During her deposition, Jute's admitted that she did not believe that she would have been laid off had she accepted promotion to labor grade five on the second shift.  In addition to Jute's failure to raise a prima facie case of retaliation in connection with her lay off, this admission compels judgment for Hamilton on Jute's claim of retaliatory job termination.

21

attributing its decision to deny Jute employment to any communication by a Hamilton employee.  To the contrary, Larry Alberti of Hamilton gave Jute a favorable reference, and Byron Yost simply provided no statement at all because of Jute's pending charge with the CCHRO and the EEOC.

Because Jute has failed to establish a prima facie case of retaliation in violation of Title VII, Hamilton is entitled to judgment as a matter of law.[5]

### CONCLUSION

For the foregoing reasons, Hamilton's motion for summary judgment is GRANTED (document no. 57).

It is so ordered, this 14th day of June, 2004, at Hartford, Connecticut.

Alfred V. Covello
United States District Judge

_____

[5] Because Hamilton is entitled to summary judgment on Jute's Title VII claim, Hamilton is also entitled to summary judgment on Jute's claim on count two alleging retaliation in violation of Conn. Gen. Stat. § 46a-60.

22